## JACOB COOL *et al.*

### *v.*

## PHILLIPS & CARMICHAEL.

1. WAREHOUSE RECEIPT—*as evidence of ownership.* Where one, having an elevator, and in the habit of purchasing grain for others, gave a warehouse receipt stating that he had received a lot of corn on storage for the holders of the receipt, in well covered cribs, and agreeing to hold the same for such holders, subject to their order, at the end of which were these

words: "Subject to their order, for all advances of money on the same:" *Held,* that the latter words did not convert the receipt into a mere pledge, and render the corn liable to an execution against the party giving it, issued subsequently to the date of the receipt.

2.  OWNERSHIP—*corn purchased as agent for another.* Where a person engaged in the grain business for himself and others, purchased and held a lot of corn for parties who advanced him the money for that purpose, it was *held,* that the corn was the property of the parties advancing the money, and that the agent had no interest in it subject to execution.

3.  FRAUD—*as against creditors.* Where the owner of an elevator had money advanced to him by a third party, with which to buy and hold for such party a lot of corn, the fact that such agent received corn in payment of debts due him, as a means of collecting the same, and for that purpose paid more than the market value, but only charged his principal with the market value, will not necessarily render the transaction fraudulent as to creditors, and subject such corn to execution subsequently issued against the agent.

APPEAL from the Circuit Court of Mercer county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. PEPPER & WILSON, for the appellants.

Messrs. BASSETT & CONNELL, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass, commenced by appellees, in the Mercer circuit court, against appellants, to recover the value of a quantity of corn sold by one John McPherren under execution, and bid in by Cool, and by him sold to Harvey. The defense in the court below was a justification under an execution from a justice of the peace, and a levy upon and sale of the corn by the constable. The execution was in favor of one Grant, and against Pulaski Roberts, and it is claimed that the corn belonged to him, and not to appellees. On the trial by the court, the issues were found in favor of plaintiffs, and a judgment rendered for them for $177.24. To reverse this judgment the record is brought to this court on appeal.

The only question discussed is, whether the evidence sustains the verdict.

Appellees, on the trial below, read in evidence a warehouse receipt for this and the balance of 1400 bushels of corn, given by Roberts to them before the execution was issued, under which appellants claim to derive title. This warehouse receipt seems to be regular in all respects, but has at the end of it this expression: "Subject to their order, for advances of money on the same." It is contended that this language renders the transaction only a pledge, and that it rebuts the presumption that the corn belonged to appellees. We are not able to see that such is the purport or effect of the receipt. The receipt says that Roberts had received this corn in storage of appellees in well covered cribs, which he agreed to hold and deliver to them subject to their order. Roberts being a warehouseman, having an elevator, and handling grain for himself and others, we would expect him to give such a receipt in the due course of his business, and by adding the words at the end of the receipt, "for advances of money on the same," did not convert this receipt into a mere pledge.

It may have been, and probably was, used as a memorandum, to answer the place of a receipt or an acknowledgment by Roberts that appellees had advanced the money with which it had been purchased. And this seems to have been the case, as Roberts testifies that he purchased the corn for appellees, they furnishing the money. This evidence, of itself, is sufficient, independent of the receipt, to prove that the corn belonged to appellees. If, as Roberts swears, they furnished him the money to buy the corn for them, and he did so, then the corn was undeniably theirs, and Roberts had no interest in it subject to execution.

The owner of an elevator may act as the agent of others in the purchase of grain precisely as may any other agent. In fact, the public are less liable to be misled by his having grain in his possession, as they know he is in the habit of purchasing and holding grain for others. Roberts' evidence is clear and specific that he purchased the grain and held it

for appellees, and that they furnished the money for the purpose.

An effort was made to break the force of his evidence by showing that a part of the corn was delivered by persons in discharge of notes held by Roberts against them, and that he said he was paying more than the market price for corn, as he was getting it on debts due him.  This is not necessarily inconsistent with his evidence.  If appellees, as he says, furnished him with the money to buy the corn, he may have adopted that mode of purchasing the corn for appellees, and at the same time collecting his debts.  If he thus purchased the corn, and retained the money on the debts owing him, we fail to see any reason why the corn would not belong to appellees.  Or, if he purchased on notes in that manner, giving more than the cash price, and turned the corn over to appellees at the market price, we fail to see that the title would not at once vest in appellees.  It is more reasonable to infer that a portion of the corn was purchased in this mode than to believe that Roberts wilfully stated what he knew to be false.

We are satisfied that the evidence fully sustains the finding of the court below, and the judgment must be affirmed.

*Judgment affirmed.*